UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON RAISER, | Case No. EDCV 19-1465-DSF (KK) |
| Plaintiff, | |
| v. | ORDER DISMISSING THIRD AMENDED COMPLAINT WITH LEAVE TO AMEND |
| CITY OF TEMECULA, ET AL., | |
| Defendant(s). | |

# I.

# **INTRODUCTION**

Plaintiff Aaron Raiser ("Raiser"), proceeding pro se and in forma pauperis, filed a Third Amended Complaint ("TAC") pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging various violations of his Fourth, Fifth, Eighth and Fourteenth Amendment rights.  Defendants County of Riverside, Wade, Carpenter, Hollingsworth, Deforest, Wood, Gardner, Aguire, and Rodriguez filed a Motion to Dismiss Portions of the Third Amended Complaint.  For the reasons discussed below, the Court dismisses the TAC with leave to amend and denies the Motion to Dismiss Portions of the Third Amended Complaint as MOOT.

///

///

## II.

## __PROCEDURAL HISTORY__

On August 7, 2019, Raiser initiated the instant action by filing a Complaint alleging various Section 1983 claims against defendants City of Temecula, the County of Riverside, several individuals, "All Judges in the Western and Eastern Divisions of This Court," and "All Staff Who Are Not Judges in All Divisions of This Court." Dkt. 1.

On November 4, 2019, following the Court's rulings on Raiser's various motions to recuse judges and motions for reconsideration, see dkts. 8, 15, and 36, Raiser filed a motion for leave to file an amended complaint and attached a First Amended Complaint to the motion.  Dkt. 23.

On April 8, 2020, the Court issued an order permitting Raiser to amend the Complaint, but prohibited Raiser from including Central District judges and court staff as defendants.  Dkt. 30.

On May 26, 2020, Raiser filed a Second Amended Complaint ("SAC") against defendants City of Temecula, County of Riverside, Jon Wade, Kevin Carpenter, Leonard Danny Hollingsworth, Lance Deforest, Lyndon Ray Wood, Deputy Rodriguez, and Does 1-25 in their individual and official capacities.  Dkt. 38.

On July 15, 2020, the Court ordered service of the SAC on the named defendants.[1]  Dkts. 39, 40.

On August 3, 2020, Raiser identified Salvador Aquire Jr.[2] as "Doe 1" and Matthew Gardner as "Doe 2."  Dkt. 43.  On August 4, 2020 the Court ordered service of the SAC on defendants Aguire and Gardner.  Dkts. 47, 48.

---

[1] On July 14, 2020, the Court issued an order notifying Raiser that if he wished to proceed with his claims against the Doe defendants, he must provide to the Court in writing the names of the Doe defendants within thirty (30) days in order for the Court to issue an order regarding service for the claims against the Doe defendants.  Dkt. 39.

[2] It appears the proper spelling of defendant's last name is Aguire.  See dkt. 62.

1        On September 2, 2020, defendants County of Riverside, Wade, Carpenter,

2  Hollingsworth, Deforest, Wood, Gardner, and Aguire filed a Motion to Dismiss

3  Portions of the SAC.  Dkt. 51.  On September 3, 2020, the Court granted the parties'

4  stipulation to dismiss all claims against individual defendants in their official capacities

5  without prejudice.  Dkt. 57.

6        On September 13, 2020, prior to the Court's ruling on the Motion to Dismiss

7  Portions of the SAC, Raiser filed the operative TAC pursuant to Federal Rule of Civil

8  Procedure 15 (a)(1)(B), setting forth nineteen causes of action against defendants City

9  of Temecula, County of Riverside, Wade, Rodriguez, Wood, Carpenter,

10  Hollingsworth, Deforest, Aguire, Gardner, and Does 3-25 in their individual and

11  official capacities ("Defendants").  Dkt. 58.

12        On September 14, 2020, the Court issued an Order deeming the Motion to

13  Dismiss Portions of the SAC moot and ordered Defendants to file a response to the

14  TAC.  Dkt. 59.

15        On September 21, 2020, defendants County of Riverside, Wade, Carpenter,

16  Hollingsworth, Deforest, Wood, Gardner, Aguire and Rodriguez[3] ("Moving

17  Defendants") filed a Motion to Dismiss Portions of the TAC.[4]  Dkt. 62.  Moving

18  Defendants simultaneously filed a Request for Judicial Notice requesting the Court

19  take judicial notice of certain docket entries in another case filed in this Court, Raiser

20  v. City of Temecula, 5:17-cv-217 RGK-RAO ("Raiser I").  Dkt. 63.[5]  The parties also

21  filed a stipulation clarifying Raiser is not suing any individual defendants in their

22  official capacity, and "all allegations against the individual defendants in their official

23  capacities are dismissed without prejudice."  Dkt. 64.

24

25

_____

26  [3] On October 14, 2020, defendant Deputy Arturo Rodriguez filed a Joinder in the Motion to Dismiss Portions of the TAC.  Dkt. 74.

27  [4] Because the Court dismisses the TAC with leave to amend, Moving Defendants' Motion to Dismiss Portions of the TAC is denied as MOOT.

28  [5] Moving Defendants' Request for Judicial Notice is GRANTED.

On October 5, 2020, Raiser filed an Opposition to the Motion to Dismiss Portions of the TAC.  Dkt. 71.  On October 6, 2020, Moving Defendants filed a Reply.  Dkt. 72.  On October 7, 2020, Raiser submitted a "Notice of Errata" stating all references in the TAC to defendant Carpenter should be to "Chris Ibrahim."  Dkt. 73.  On October 19, 2020, Raiser filed a Sur-Reply.  Dkt. 75-1.  The matter thus stands submitted.

## III.
## ALLEGATIONS IN THE TAC

The Court herein summarizes Raiser's allegations in the TAC as follows:

On or about December 12, 2015, Raiser's car was towed due to an expired registration.  Dkt. 58 at 25–26.  Raiser alleges it was raining and approximately 42 degrees and Raiser had no coat and nowhere to sleep.  Id.  Raiser asked "Doe 3", an officer, to call the towing company so he could retrieve his coat and sleeping bag from the car, which contained all his belongings, but "the officer claimed he phoned the tow company and the tow company refused to allow Plaintiff any chance to get his belongings."  Id.  Raiser alleges that in approximately March 2018 during discovery in the "Temecula II case,"[6] he learned that the officer "faked" the phone call to the towing company and falsely stated the towing company refused to allow Raiser to get his belongings.  Id.  (Claim Nine).

On or about the night of February 19, 2017, Raiser was sitting in his car on "Commerce Centre Bl." which is "across the street from the CHP office" when defendant Carpenter, a Riverside County deputy, detained Raiser.  Id. at 27–28.  Defendant Carpenter told Raiser he was being detained because "several business alarms had gone off in the immediate area."  Id. at 27.  Raiser alleges he learned

---

[6] "Temecula II" appears to be a reference to Raiser v. City of Temecula, 5:17-cv 217 RGK (RAO).  As stated herein, for purposes of this Order, the Court refers to this case as "Raiser I."

4

1   during discovery in August 2017 in the "Temecula II case" that defendant Carpenter

2   was lying and no alarm had gone off.  Id.  (Claim Eleven).

3         On or about April 24, 2017, Raiser was sitting in his car "on Del Rio in

4   Temecula" when defendant Wade, a Temecula police officer, "snuck up" on Raiser in

5   an unmarked car and knocked on Raiser's rear window.  Id. at 28.  Raiser was

6   frightened and attempted to drive off "a few feet" and was told to stop and that he

7   could not drive away when a Temecula police officer pulls up behind him.  Id.

8   Defendant Wade informed Raiser "someone had called the police on him."  Id.

9   Raiser alleges he learned during discovery in the Temecula II case in August 2017 that

10  no one had called the police on him.  Id.  (Claim Twelve).

11        On September 7, 2017, Raiser was sitting in his car "on Madison near McCabe

12  Ct. in Temecula."  Id. at 19.  Defendant Gardner,[7] a Riverside County sheriff's

13  deputy, pulled up behind Raiser, who began to slowly drive away.  Id.  Defendant

14  Gardner then activated his lights and pulled Raiser over, and after "about 8 minutes,"

15  permitted Raiser to leave.  Id.  (Claim Two).

16        On January 2, 2018, around 2 p.m., Raiser was sitting in his car "off of Borel

17  near Winchester Drive" when defendant Deforest, who was training another deputy

18  (non-defendant deputy Velazquez) how to "conduct a random occupied vehicle

19  check—the unconstitutional way," told Raiser to stop when Raiser attempted to

20  slowly drive away.  Id.  Raiser gave defendant Deforest his name, date of birth, and

21  was permitted to leave after about four minutes.  Id.  (Claim Three).

22        On or about April 18, 2018, Raiser was sitting in his car "off of Borel near

23  Winchester Drive" when a "Riverside [C]ounty deputy" detained Raiser for about two

24  minutes despite having no "articulable suspicion Raiser was breaking any laws."  Id. at

25  21.  (Claim Four).

26

27

28  _____
[7] Raiser alleges defendant Gardner "remains a Doe defendant pending discovery."
    Dkt. 58 at 19.

On April 28, 2018, Raiser was sitting in his car "off of Borel near Winchester Drive" when he was detained by "a Riverside [C]ounty deputy (Doe 1) for about 1 minute" despite the fact that Raiser was not suspected of breaking any laws. Id. at 21–22.  (Claim Five).

On or about April 28, 2018, Raiser was sitting in his car "off of Borel near Winchester Drive" when he was detained by defendant Hollingsworth, who walked up from behind Raiser's car with his gun drawn, pointing downward. Id. at 22. Raiser asked if he could leave, but was denied permission to leave. Id. at 22–23. Defendant Hollingsworth then requested Raiser provide his driver's license. Id.  After about seven minutes, Raiser was permitted to leave. Id. (Claim Six).

On or about August 21, 2018, at approximately 9:00 a.m., Raiser was sitting in his car "on McCabe Ct. in Temecula" when "[defendant] Rodriguez (Doe 2)" pulled up behind Raiser, who began to slowly drive away. Id. at 23. Defendant Rodriguez put his police lights on, stopped Raiser, and asked for his driver's license. Id. Raiser alleges he uttered something like "geez" under his breath, which caused defendant Rodriguez to order Raiser out of the car, conduct a pat-down, and search Raiser's pockets for weapons. Id. at 23–24. Defendant Rodriguez then handcuffed Raiser for over thirty minutes, "put [Raiser] in the back of the patrol car," and questioned Raiser for approximately fifteen minutes in the patrol car. Id. Raiser was then told he was permitted to leave, but could not leave for an additional fifteen minutes while defendant Rodriguez waited for the keys to the handcuffs to arrive. Id.  Raiser claims he was cooperative and posed no threat, and that his hands swelled up for several hours after the encounter. Id. at 24–25. (Claims Seven and Eight).

On or about June 2019, Raiser was sitting in his car "between Borel and Winchester on the top of a small hill overlooking the airport" in an area frequented by hikers, SUVs and trucks. Id. at 37–38. Three deputies walked up behind Raiser's car and "Doe 17" ordered Raiser out of his car with his gun drawn. Id. After conducting a background check, the deputies left. Id. (Claim Eighteen).

1    On or about August 21, 2019, after shopping at Sprouts Market, Raiser was

2    parked in a strip mall parking lot near Sprouts Market on Temecula Parkway around

3    6:30 p.m.  Id. at 18.  After Raiser was parked for approximately 15 to 20 minutes,

4    defendant Aguire,[8] a Riverside County sheriff's deputy, pulled up next to Raiser and

5    got out of his vehicle.  Id.  Raiser began to drive away but was ordered by defendant

6    Aguire to stop, despite the fact Raiser was not breaking any laws.  Id.  (Claim One).

7    On August 25, 2019 at approximately 9:00 a.m., Raiser was sitting in his car

8    outside of Temecula when defendant Wood "(Doe 5)", a Riverside County deputy,

9    pulled up behind Raiser, blocking his exit, and then walked up to Raiser and told him

10   to turn off his motor.  Id. at 29.  Defendant Wood asked for Raiser's license and ran a

11   background check and asked Raiser if he was on probation or parole.  Id.  Raiser

12   alleges defendant Wood "said he was acting in conformance with department training

13   and policy."  Id. at 30.  "About 5 minutes into the stop" defendant Wood told Raiser

14   he was not being detained, returned his license, and left.  Id.  (Claim Thirteen).

15   On or about September 17, 2019 Raiser was sitting in his car "near the corner

16   of Winchester and Borel" when "Doe 15," "a Riverside County deputy and Temecula

17   police officer," detained Raiser "without basis" and the deputy "fabricated" that

18   Raiser was on private property.  Id. at 36–37.  (Claim Seventeen).

19   Additionally, Raiser alleges he has been stopped and detained by Riverside

20   County sheriffs deputies "over 50 times"[9] without basis; has spoken with two

21   homeless people who were detained and ID'd by Riverside County sheriffs "on 23

22   occasions in the past 2 years"; has spoken with three other homeless people who

23   stated they and others had been detained "in 2015"; has spoken with "a homeless girl"

24   in Temecula who said "she had been unlawfully detained by the Temecula police 20

25   times in the last 6 months"; had spoken with another homeless person who said he

26   _____

27   [8] Raiser alleges defendant Aguire is "Doe 1" and "remains a Doe defendant pending discovery."  Dkt. 58 at 18.

28   [9] Raiser states in Claim Nineteen he has been "unlawfully detained by Riverside [C]ounty deputies 40 times from 2011 through 2017."  Dkt. 58 at 38.

had been "detained many times unlawfully by the Temecula police"; and has witnessed other detainments in June 2018. Id. at 30–32. Raiser alleges "city leaders" promote these policies, and new deputies are trained how to carry them out. Id. at 32. He further alleges Defendants are on notice since he has "filed 4 prior lawsuits against Defendants in an effort to get them to change their ways, properly train their deputies, supervise them and discipline them." Id. at 33. Accordingly, Raiser alleges the City of Temecula and County of Riverside have "a custom, policy and/or pattern of unlawfully detaining citizens to ID them." Id. at 31, 35.

Finally, while not included in any specific cause of action, Raiser sets forth general allegations that he was unlawfully stopped by the City of Temecula police multiple times in 2012, id. at 3; was stopped "in or near" the city of Temecula by Riverside County sheriffs multiple times from 2012 to 2014, which provided the basis for "case 14-CV-2363 (Temecula I)", id. at 3–7; was stopped "in or near" the city of Lake Elsinore by Riverside County sheriffs multiple times from 2011 to 2012, which provided the basis for "case 12-CV-604 (Lake Elsinore I)" and multiple times from 2012 to 2015 which provided the basis for "case 13-CV-1394 (Lake Elsinore II)", id. at 7–11; and was stopped "in or near" the city of Temecula by Riverside County sheriffs multiple times from 2015 to 2017, which provided the basis for "Temecula II," id. at 12–18.

Based on these allegations, Raiser sets forth the following claims pursuant to Section 1983:

- Claims One, Two, Three, Four, Five, Six, Seven, Eight, Nine, Eleven, Twelve, Thirteen, Seventeen, and Eighteen allege violation of Raiser's Fourth and Fourteenth Amendment rights against defendants City of Temecula, County of Riverside, Aguire, Gardner, Deforest, Hollingsworth, Rodriguez, Wade, Wood, Carpenter, and various DOE defendants;
- Claim Eight alleges a violation of the Eighth Amendment against defendants City of Temecula, County of Riverside, and Rodriguez;

1    • Claim Nine alleges violations of the Fourth and Fourteenth Amendments,
2        "deliberate indifference" in violation of the Eighth Amendment, and
3        "unlawful taking" in violation of the Fifth Amendment, against defendants
4        City of Temecula, County of Riverside, and "Doe 3";
5    • Claim Ten seeks a "declaratory judgment" against all Defendants that
6        Raiser's "civil rights were violated in causes of action 1-9, 11-18";
7    • Claims Fourteen, Fifteen, and Sixteen are claims against the City of
8        Temecula[10] and County of Riverside alleging liability based on <u>Monell v.</u>
9        <u>Department of Social Services</u>, 436 U.S. 658 (1978) ("<u>Monell</u>") for 1)
10       maintaining and "ratifying" a policy of unlawfully detaining citizens to find
11       out their identify; unlawfully detaining citizens sitting in their cars to find out
12       their identify; unlawfully detaining homeless citizens to find out their
13       identify; and 2) failing to train deputies to prevent "unlawfully detaining
14       citizens, including Plaintiff, to find out their identify; unlawfully detaining
15       citizens sitting in their cars to find out their identify; unlawfully detaining
16       homeless citizens to find out their identity"; and
17   • Claim Nineteen alleges unlawful policies of detainment and "deliberate
18       indifference" against County of Riverside.
19       Raiser seeks monetary damages on all claims except Claim Ten, which requests
20   a declaratory judgment.  <u>Id.</u> at 27.

21                                      **IV.**

22                          **STANDARD OF REVIEW**

23       Where, as here, a plaintiff is proceeding <u>in forma pauperis</u>, a court must screen
24   the complaint under 28 U.S.C. § 1915 and is required to dismiss the case at any time if

---

26   [10] The Court notes Claims Fourteen, Fifteen and Sixteen are against both the City of
27   Temecula and Riverside County, but the body of the claims refer to city leaders and
     the mayor of Temecula, as well as deputies.  Dkt. 58 at 31, 35.  In any amended
28   complaint, Plaintiff shall clarify whether his <u>Monell</u> claims are against both the City of
     Temecula and County of Riverside.

1   it concludes the action is frivolous or malicious, fails to state a claim on which relief

2   may be granted, or seeks monetary relief against a defendant who is immune from

3   such relief.  28 U.S.C. § 1915(e)(2)(B); see Barren v. Harrington, 152 F.3d 1193, 1194

4   (9th Cir. 1998).

5         Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must contain a

6   "short and plain statement of the claim showing that the pleader is entitled to relief."

7   FED. R. CIV. P. 8(a)(2).  In determining whether a complaint fails to state a claim for

8   screening purposes, a court applies the same pleading standard as it would when

9   evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  See

10  Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

11        A complaint may be dismissed for failure to state a claim "where there is no

12  cognizable legal theory or an absence of sufficient facts alleged to support a

13  cognizable legal theory."  Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007).  In

14  considering whether a complaint states a claim, a court must accept as true all of the

15  material factual allegations in it.  Hamilton v. Brown, 630 F.3d 889, 892–93 (9th Cir.

16  2011).  However, the court need not accept as true "allegations that are merely

17  conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re

18  Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).  Although a complaint

19  need not include detailed factual allegations, it "must contain sufficient factual matter,

20  accepted as true, to state a claim to relief that is plausible on its face."  Cook v.

21  Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662,

22  678 (2009)).  A claim is facially plausible when it "allows the court to draw the

23  reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The

24  complaint "must contain sufficient allegations of underlying facts to give fair notice

25  and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d

26  1202, 1216 (9th Cir. 2011).

27        "A document filed pro se is 'to be liberally construed,' and a 'pro se complaint,

28  however inartfully pleaded, must be held to less stringent standards than formal

1  pleadings drafted by lawyers.'" <u>Woods v. Carey</u>, 525 F.3d 886, 889–90 (9th Cir. 2008).

2  However, liberal construction should only be afforded to "a plaintiff's factual

3  allegations," <u>Neitzke v. Williams</u>, 490 U.S. 319, 330 n.9 (1989), and a court need not

4  accept as true "unreasonable inferences or assume the truth of legal conclusions cast

5  in the form of factual allegations," <u>Ileto v. Glock Inc.</u>, 349 F.3d 1191, 1200 (9th Cir.

6  2003).

7      If a court finds the complaint should be dismissed for failure to state a claim,

8  the court has discretion to dismiss with or without leave to amend.  <u>Lopez v. Smith</u>,

9  203 F.3d 1122, 1126–30 (9th Cir. 2000).  Leave to amend should be granted if it

10  appears possible the defects in the complaint could be corrected, especially if the

11  plaintiff is <u>pro se</u>.  <u>Id.</u> at 1130–31; <u>see also</u> <u>Cato v. United States</u>, 70 F.3d 1103, 1106

12  (9th Cir. 1995).  However, if, after careful consideration, it is clear a complaint cannot

13  be cured by amendment, the court may dismiss without leave to amend.  <u>Cato</u>, 70

14  F.3d at 1107–11; <u>see also</u> <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 972 (9th Cir. 2009).

15                               **V.**

16                          <u>**DISCUSSION**</u>

17  **A.    RES JUDICATA**

18      **1.    Applicable Law**

19      "Res judicata, also known as claim preclusion, bars litigation in a subsequent

20  action of any claims that were raised or could have been raised in the prior action."

21  <u>Owens v. Kaiser Found. Health Plan, Inc.</u>, 244 F.3d 708, 713 (9th Cir. 2001) (quoting

22  <u>W. Radio Servs. Co. v. Glickman</u>, 123 F.3d 1189, 1192 (9th Cir. 1997)).  Res judicata

23  bars an action when there is: (1) "identity or privity between parties"; (2) "an identity

24  of claims"; and (3) "a final judgment on the merits."  <u>Stewart v. U.S. Bancorp</u>, 297

25  F.3d 953, 956 (9th Cir. 2002).  The U.S. Supreme Court has made clear that there is

26  no "principle of law or equity which sanctions the rejection by a federal court of the

27  salutary principle of res judicata."  <u>Federated Dep't Stores, Inc. v. Moitie</u>, 452 U.S.

28

394, 401 (1981).  "The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case."  Id.

"[I]f a court is on notice that it has previously decided the issue presented, the court may dismiss the action sua sponte, even though the defense [of res judicata] has not been raised.  This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste."  Arizona v. California, 530 U.S. 392, 412 (2000), supplemented, 531 U.S. 1 (citations omitted).  The parties, however, should have an opportunity to be heard prior to a court's sua sponte dismissal based on res judicata.  See Headwaters Inc. v. U.S. Forest Serv., 399 F.3d 1047, 1055 (9th Cir. 2005); see also Cramer v. Dickenson, No. 1:08-CV-00375-AWI, 2013 WL 127639, at *2 (E.D. Cal. Jan. 9, 2013), report and recommendation adopted sub nom. Cramer v. Dickinson, No. 1:08-CV-00375-AWI, 2013 WL 1192402 (E.D. Cal. Mar. 21, 2013), aff'd, 586 F. App'x 381 (9th Cir. 2014).

## 2. Additional Factual Background Regarding Raiser v. City of Temecula, 5:17-cv 217 RGK (RAO) ("Raiser I")

On February 6, 2017, Raiser initiated the "Raiser I" action in this Court in Raiser v. City of Temecula, 5:17-cv 217 RGK (RAO).  On May 31, 2017, Raiser filed a first amended complaint setting forth forth twenty-six claims against defendants City of Temecula, County of Riverside, State of California, Does 1-25, and five individual officers, alleging violations of Raiser's Fourth, Fifth, Eighth and Fourteenth Amendment rights.  Raiser I, dkt. 12, FAC.  The claims arose out of various encounters with law enforcement from February 2015 through April 1, 2017.  Id. at 12–36.

On November 4, 2019, the parties in Raiser I entered into a stipulation dismissing a total of eight claims from the first amended complaint, agreeing to proceed to a jury trial on twelve claims, and agreeing to a court determination on four claims.  Raiser I, dkt. 264, Stipulation.

12

On December 10, 2019, "Phase I (Section 1983 claims against individual defendants)" of trial began.  See Raiser I, dkt. 368, Order re Equitable Claims.  Evidence was presented to the jury, and at the end of Raiser's case, defendants filed a Rule 50 motion seeking judgment as a matter of law.  Id.  The Court deferred ruling on defendants' Rule 50 motion.  Id.  On December 11, 2019, the jury deliberated and returned a verdict in favor of Raiser on a single Section 1983 claim against defendant Deputy Butts.  Id.

On December 11, 2019, "Phase II (Monell claim and damages)" of trial commenced.  Id.  After the parties rested, the Court heard Raiser's and the defendants' Rule 50 motions.  Id.  The Court denied Raiser's motion and granted Defendants' motion as to Monell liability and damages.  Id.  With respect to Defendants' motion, the Court specifically found insufficient evidence to support either Monell liability or damages.  Id.  At the conclusion of the jury trial, the Court directed the parties to brief the status of Raiser's four remaining equitable claims: Claims 16, 20, 24 and 26.   Id.

On February 19, 2020, the Court issued a ruling on Raiser's four equitable claims and found in favor of defendants.  Dkt. 368.  Specifically, with respect to claims 20, 24 and 26 against Riverside County and City of Temecula, the Court found "based on the evidence produced, the Court has already found insufficient evidence of any unconstitutional practice or policy on the part of the County or City.  Moreover, Raiser has not presented any evidence that he was detained just to check his ID or harass him, simply for sitting in his car while homeless, or based solely on a citizen complaint."  Id. at 2.

On March 23, 2020, the Court entered Judgment in favor Raiser against defendant Deputy Richard Butts in the sum of $1, and judgment in favor of defendants County of Riverside, City of Temecula, Deputy Brian Nelson, Deputy Jared Melback, and Deputy Steven Waroff on all other claims.  Raiser I, dkt. 390, Judgment.

1    On April 22, 2020, Raiser appealed the judgment in Temecula I, which is

2   currently pending before the Ninth Circuit.  Raiser I, dkt. 398, Notice of Appeal.

3    **3.    Claim Eleven Is Not Barred by Res Judicata**

4    In Claim Eleven of the TAC, Raiser alleges that "on or about" the night of

5   February 19, 2017, he was sitting in his car on Commerce Centre Bl. "across the street

6   from the CHP office" when defendant Carpenter, a Riverside county deputy, detained

7   Raiser. Dkt. 58 at 27–28.  Defendant Carpenter told Raiser the reason he was being

8   detained was "several business alarms had gone off in the immediate area." Id. at 27.

9   Raiser has subsequently filed a "Notice of Errata" indicating all references in the TAC

10   to defendant Carpenter should be to "Chris Ibrahim." Dkt. 73.

11    In Raiser I, Raiser's claim 22 of the first amended complaint alleged that "on or

12   about" February 16, 2017, Raiser was "sitting in his car on Commerce Centre Bl."

13   when a deputy detained him because "a business alarm had gone off in the area."

14   Raiser I, dkt. 12 at 21–32.  Claim 22 appears to have proceeded to jury trial and the

15   jury reached a verdict finding Raiser's constitutional rights were not violated by "a

16   deputy sheriff" on February 16, 2017.  Raiser I, dkt. 264, Stipulation; Raiser I, dkt.

17   390, Judgment.

18    Here, the Court does not find all three criteria for res judicata are satisfied with

19   regard to Claim Eleven of the TAC.  While Claim 22 in Raiser I appears to have been

20   subject to "a final judgment on the merits" because it was tried before a jury, see

21   Raiser I, dkt. 390, it is not clear claim 22 and the instant Claim Eleven of the TAC are

22   identical.  First, Claim Eleven of the TAC alleges Raiser was stopped by a deputy on

23   or about February 19, 2017, whereas claim 22 of the Raiser I action alleges a stop

24   occurred on February 16, 2017.  While the two incidents appear factually similar and

25   close in date, the Court cannot conclude the claims refer to the same incident.[11]

26   Second, in light of Raiser's Notice of Errata that he intended to name "Chris

27

28   [11] Raiser argues in his Opposition to the Motion to Dismiss Portions of the TAC that
    Claim Eleven is indeed a "separate incident" from claim 22.  Dkt. 71.

14

Ibrahim" in Claim Eleven of the TAC, Claim Eleven appears to arise from a separate, unlitigated event involving a different defendant.

Hence, to the extent Claim Eleven does not concern events occurring on February 16, 2017, it is not barred by res judicata.  Any amended complaint should name with specificity the date and parties involved in the February 19, 2017 incident that is the basis for Claim Eleven.

**4.      Claims Fourteen, Fifteen, Sixteen, and Nineteen and All Claims Against County of Riverside Are Not Barred by Res Judicata**

Res judicata does not apply to events post-dating the filing of the initial complaint.  Howard v. City of Coos Bay, 871 F.3d 1032, 1039 (9th Cir. 2017) (internal quotations and citations omitted).  Here, applying such rule, it is clear that the Monell claims in the instant TAC (Claims 14, 15, 16, and 19 and claims against defendant County of Riverside) and the Monell claims in Raiser I are not identical.

In Raiser I, following a jury trial, the Court granted defendants' Rule 50 motion as to Monell liability and damages, and specifically found insufficient evidence to support either Monell liability or damages against defendants.  Raiser I, dkt. 364.

In Claims 14, 15, and 16 of the TAC, Raiser alleges Monell liability against City of Temecula and County of Riverside for maintaining and ratifying a policy of unlawfully detaining citizens and for failing to train deputies to prevent these allegedly unlawful policies from being carried out.  See dkt. 58 at 30–36.  In Claim 19, Raiser also appears to allege a Monell claim against defendant County of Riverside.  Id. at 38–39.

While Raiser sets forth a long series of general allegations in the TAC regarding incidents that occurred from 2011 through early 2017, (see id. at ¶ 18-41, 46-65, 195), it appears his Monell claims are based on more recent incidents he identifies as specific claims in the TAC.  With the exception of claims Nine, Eleven and Twelve (which concern incidents from 2015 and 2017, and which are subject to dismissal based on the statute of limitations, discussed below in Section B. 2. and 3.), all claims

15

1   in the TAC occurred between September 2017 and September 2019.  See dkt. 58 at

2   18–25, 29, 36–38 (Claims One, Two, Three, Four, Five, Six, Seven, Eight, Thirteen,

3   Seventeen, and Eighteen).  Raiser, however, filed his initial complaint in Raiser I on

4   February 6, 2017 and a first amended complaint on May 31, 2017.  See Raiser I, dkts.

5   1, 12.  Therefore, the stops that occurred from September 2017 through September

6   2019, which provide the basis for Raiser's current Monell claims, had not yet occurred

7   at the time of the Raiser I action.  Raiser, therefore, could not have brought Monell

8   claims in Raiser I based on stops that occurred from 2017 through 2019.  Howard,

9   871 F.3d at 1039.[12] Hence, because Raiser's Claims Fourteen, Fifteen, Sixteen and

10  Nineteen arise from events that occurred after he filed his amended complaint in

11  Raiser I, they are not barred by res judicata.  In any amended complaint, Raiser shall

12  clarify the specific basis of Monell claims without reference to incidents that he does

13  not assert support such claims.

14  **B.    STATUTE OF LIMITATIONS**

15      **1.    Applicable Law**

16      The applicable statute of limitations for Raiser's Section 1983 claims is two

17  years.  See Wallace v. Kato, 549 U.S. 384, 387 (2007) (holding state personal injury

18  limitation statute governs Section 1983 claims); Cal. Code Civ. Proc. § 335.1 (noting a

19  two-year personal injury statute of limitation).  A Section 1983 "cause of action

20  accrues when the plaintiff knows or has reason to know of the injury that is the basis

21  of the action."  Belanus v. Clark, 796 F.3d 1021, 1025 (9th Cir. 2015), cert. denied,

22  137 S. Ct. 109, reh'g denied, 137 S. Ct. 489 (2016) (citing Kimes v. Stone, 84 F.3d

23  1121, 1128 (9th Cir. 1996)); see also Wallace, 549 U.S. at 388 (holding federal law

24  determines when a cause of action accrues and when the statute of limitations begins

25  to run for a Section 1983 claim).  However, California's "discovery rule" of tolling

26

27  _____

28  [12] Additionally, Raiser clarified he is only bringing Monell claims on the basis of
    events that occurred from 2017 to 2019.  See dkt. 71, Opp. at 4 ("In this case the issue
    is whether there is Monell liability for the stops of 2017-2019.").

16

1  "postpones accrual of a cause of action until the plaintiff discovers, or has reason to

2  discover, the cause of action."  Bone v. City of Los Angeles, 471 F. App'x 620, 622

3  (9th Cir. 2012)[13] (citing Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807

4  (2005)); see also TwoRivers v. Lewis, 174 F.3d 987, 991 (9th Cir. 1999) (holding that

5  when federal courts borrow a state limitations period, the court also borrows the

6  forum state's tolling rules).

7       Here, Raiser filed the instant action on August 7, 2019.  Dkt. 1.  Absent any

8  tolling, any claims arising before August 7, 2017 would be barred by the statute of

9  limitations.

10      **2.**      **Claim Nine is Barred by the Statute of Limitations**

11       In Claim Nine, Raiser alleges on or about December 12, 2015, his car

12  containing his coat and sleeping bag was towed.  Dkt. 58 at 26.  Raiser alleges officer

13  "Doe 3" claimed to call the towing company and told Raiser the towing company

14  refused to allow Raiser to get his belongings.  Id.  Raiser alleges it was not until March

15  2018 during discovery in the Raiser I case that he learned the officer "faked" the

16  phone call to the towing company.  Id. at 25–26.  Raiser alleges this incident

17  constituted an unlawful seizure in violation of the Fourth and Fourteenth

18  Amendments, "deliberate indifference" in violation of the Eighth Amendment,

19  unlawful taking in violation of the Fifth Amendment, and violation of the Equal

20  Protection Clause of Fourteenth Amendment.  Id.

21       Raiser's argument the Court should apply the delayed discovery rule to this

22  claim is without merit.  Whether or not officer "Doe 3" lied about calling the towing

23  company has no bearing on whether the alleged constitutional violations—seizure of

24  Raiser's car and items, which resulted in him being left without appropriate clothing

25  or a place to sleep—occurred.  Moreover, Raiser cannot be said to have "discovered

26

27

28    [13] The Court may cite to unpublished Ninth Circuit opinions issued on or after January 1, 2007.  U.S. Ct. App. 9th Cir. R. 36-3(b); Fed. R. App. P. 32.1(a).

1  or had reason to discover" the cause of action in 2018, because he asserted essentially

2  the same claim in <u>Raiser I</u> in 2017.  <u>See</u> <u>Raiser I</u>, dkt. 12 at 20–23.

3    Hence, Claim Nine is barred by the statute of limitations.

4  **3.**    **Claims Eleven and Twelve Are Barred by the Statute of**

5       **Limitations**

6    In Claim Eleven, Raiser alleges that on February 19, 2017, he was detained by

7  an officer while sitting in his car and was told he was being detained because "several

8  business alarms had gone off in the immediate area."  Dkt. 58 at 27–28.  Raiser alleges

9  it was not until August 2017 during discovery in the <u>Raiser I</u> case that he learned the

10  the officer was lying and no alarm had gone off.  <u>Id.</u>  Raiser now claims the officer

11  involved in this event was Chris Ibrahim and alleges the incident constituted a

12  violation of his Fourth and Fourteenth Amendment rights.

13    Similarly, in Claim Twelve, Raiser alleges that on April 24, 2017, he was sitting

14  in his car and was prevented from driving away by defendant Wade, who informed

15  Raiser "someone had called the police on him."  <u>Id.</u>  Raiser alleges it was not until

16  August 2017 during discovery in the <u>Raiser I</u> case that he learned there was no call

17  made to the police.  <u>Id.</u>  Raiser alleges the incident constituted a violation of his

18  Fourth and Fourteenth Amendment rights.

19    Raiser's argument the Court should apply the delayed discovery rule to these

20  claims is without merit.  The Court finds Raiser was on "inquiry" notice as soon as

21  the stops occurred that they may have been improper because the circumstances

22  known to Raiser during these stops prompted a duty to investigate whether

23  defendants' actions were unlawful.  <u>See</u> <u>Dutro v. Cnty. of Contra Costa</u>, No. 12-CV-

24  02972 NC, 2013 WL 5444431, at *5 (N.D. Cal. Sept. 30, 2013).  In both instances, the

25  basis for Raiser's Constitutional claims that he was illegally stopped and seized, turns

26  on whether Raiser's own conduct was sufficient to warrant being stopped; not

27  whether the officers gave false reasons for the stop.  In addition, Raiser's contention

28  he was not aware the stops may have been unlawful until he discovered the officers

were lying in August 2017 is belied by the fact that he has filed multiple lawsuits against the City of Temecula, County of Riverside and other defendants in this district for similar stops.  See Norgart v. Upjohn Co., 21 Cal.4th 383, 399 n.2 (1999) (finding that a plaintiff discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements).

Hence, Claims Eleven and Twelve are barred by the statute of limitations.

### 4.    Claim Nineteen Is Not Barred by the Statute of Limitations

In Claim Nineteen, Raiser alleges defendant County of Riverside through its "commissions and leadership" was deliberately indifferent and took no steps to minimize or prevent future Fourth Amendment civil rights violations.  Dkt. 58 at 38. Claim Nineteen thus appears to be a Monell claim.

While Claim Nineteen references incidents that occurred beyond the applicable statute of limitations in this case, including that Raiser was stopped 40 times from 2011 through 2017, Claim Nineteen also alleges Raiser's civil rights were "violated another 10 times over a 2 year period," which appears to refer to events in the past two years detailed in the TAC.  As stated above, the Court finds Raiser's Monell claims are based on incidents that occurred from September 2017 through September 2019, rather than prior incidents.

Hence, Claim Nineteen is not barred by the statute of limitations.

## C.    THE TAC FAILS TO STATE AN EQUAL PROTECTION CLAIM

In Claims One through Nine, Eleven through Thirteen, and Seventeen through Eighteen, Raiser alleges he was denied equal protection of the laws under the Fourteenth Amendment because Defendants intentionally treated him differently than others similarly situated who park their cars or sit in similar areas.

### 1.    Applicable Law

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be

1    treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439

2    (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)).  In order to state a Section

3    1983 equal protection claim, a plaintiff must allege he was treated differently from

4    others who were similarly situated without a rational basis.  See Village of

5    Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam) (setting forth standard

6    for "class of one" equal protection claim).

7          **2.     Analysis**

8          To the extent Raiser is alleging the conduct of Defendants is based on Raiser's

9    status as a homeless person, homeless individuals are not a protected class.  See Nails

10   v. Haid, No. SACV 12-0439-GW (SS), 2013 WL 5230689, at *3 (C.D. Cal. Sept. 17,

11   2013); Garber v. Flores, No. CV 08-4208DDP (RNB), 2009 WL 1649727, at *10

12   (C.D. Cal. June 10, 2009) (denying equal protection claim based on plaintiff's status as

13   a homeless person because "[h]omeless persons are not a suspect class").

14         In addition, to the extent Raiser alleges he was treated differently from other

15   similarly situated individuals, Raiser contradicts this claim by alleging other homeless

16   individuals were similarly stopped and detained.  Dkt. 58 at 31–35.  Raiser's claim,

17   therefore, is not premised on "unique treatment" but on a "classification" (i.e. being

18   homeless) which is not a protected class.  See Lazy Y Ranch Ltd. v. Behrens, 546 F.3d

19   580, 592 (9th Cir. 2008) (declining to analyze "class of one" argument because

20   plaintiff repeatedly alleged defendants treated it differently "based on its perceived

21   association with conservationists and because it was a newcomer to Idaho grazing

22   markets" and finding plaintiff's claims were, therefore, not premised on "unique

23   treatment" but on "a classification").

24         Accordingly, Raiser's Fourteenth Amendment Equal Protection claims set

25   forth in Claims One through Nine, Eleven through Thirteen, and Seventeen through

26   Eighteen, are subject to dismissal for failure to state a claim.

27   ///

28   ///

1   **D.     CLAIM TEN IS NOT REDUNANT**

2       **1.     Applicable Law**

3       A claim for declaratory relief may be "unnecessary where an adequate remedy

4   exists under some other cause of action."  Alta Devices, Inc. v. LG Elecs., Inc., 343 F.

5   Supp. 3d 868, 889 (N.D. Cal. 2018) (quoting Reyes v. Nationstar Mortg. LLC, No. 15-

6   CV-01109-LHK, 2015 WL 4554377, at *7 (N.D. Cal. July 28, 2015) (citations

7   omitted)). However, "[t]he existence of another adequate remedy does not preclude a

8   declaratory judgment that is otherwise appropriate."  FED. R. CIV. P. 57.  "Ultimately,

9   a critical question is whether the declaratory relief 'will serve a useful purpose in

10  clarifying and settling the legal relations in issue.'"  Alta Devices, Inc., 343 F. Supp. 3d

11  at 889 (quoting McGraw-Edison Co. v. Preformed Line Prods. Co., 362 F.2d 339, 342

12  (9th Cir. 1966)).

13      Qualified immunity "applies only to liability for money damages—not

14  injunctive or declaratory relief."  Daniels Sharpsmart, Inc. v. Smith, 889 F.3d 608, 616

15  (9th Cir. 2018) (citing Hydrick v. Hunter, 669 F.3d 937, 939–40 (9th Cir. 2012)

16  (holding defendants are entitled to qualified immunity on plaintiffs' claims for money

17  damages but allowing plaintiffs to proceed on remand with claims for declaratory and

18  injunctive relief); Comundoiwilla v. Evans, No. 1:04-CV-06721, 2011 WL 488994, at

19  *4 (E.D. Cal. Feb. 7, 2011), report and recommendation adopted, 2011 WL 1002802

20  (E.D. Cal. Mar. 18, 2011) ("[a]lthough the Court finds that Defendants are entitled to

21  qualified immunity, their immunity from damages does not bar Plaintiff's claims for

22  declaratory relief.").

23      **2.     Applicable Law**

24      Here, Claim Ten seeks a "declaratory judgment that [Raiser's] civil rights were

25  violated in causes of action 1-9, 11-18."  Dkt. 58 at 27.  Raiser is also seeking money

26  damages on claims One through Nine and Eleven through Eighteen.  Dkt. 58.

27  However, Raiser's claims for money damages might be limited by the doctrine of

28  qualified immunity, while any claim for declaratory relief would not.  Hydrick, 669

1  F.3d at 939–40.  In addition, declaratory relief as to whether Defendants have violated

2  Raiser's civil rights may be useful in clarifying and settling the legal relations at issue in

3  this case.  <u>Alta Devices, Inc.</u>, 343 F. Supp. 3d at 889.  Finally, while Raiser's request

4  for declaratory relief may not be available depending upon his proof at trial, at this

5  stage, Raiser's request for declaratory relief is not redundant.

6      Hence, Claim Ten is not subject to dismissal.

7  **E.    CERTAIN DOE DEFENDANTS ARE SUBJECT TO DISMISSAL**

8      **1.    Applicable Law**

9      Section 1983 prohibits persons acting under color of law from depriving

10  individuals of their constitutional rights.  42 U.S.C. § 1983.  To state a claim against a

11  defendant for violation of civil rights under Section 1983, a plaintiff must allege that

12  the defendant deprived him or her of a right guaranteed under the Constitution or a

13  federal statute.  <u>See</u> <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Karim-Panahi v. Los</u>

14  <u>Angeles Police Dep't</u>, 839 F.2d 621, 624 (9th Cir. 1998).  A plaintiff must present

15  facts showing how a particular defendant was directly and personally involved in

16  inflicting the alleged injury.  <u>See</u> <u>Iqbal</u>, 556 U.S. at 676.  Moreover, although a

17  complaint need not include detailed factual allegations, it "must contain sufficient

18  factual matter, accepted as true, to state a claim to relief that is plausible on its face."

19  <u>Cook</u>, 637 F.3d at 1004 (quoting <u>Iqbal</u>, 556 U.S. at 678).

20      **2.    Analysis**

21      Here, many of Raiser's claims against DOE defendants are erroneous, or

22  subject to dismissal because such defendants have now been identified, or

23  alternatively because the TAC does not contain "sufficient allegations of underlying

24  facts to give fair notice and to enable the opposing party to defend itself effectively"

25  against Raiser's claims.  <u>Starr</u>, 652 F.3d at 1216.

26      First, Raiser has identified certain defendants, and as such, the use of "DOE"

27  designations is no longer needed.  Raiser identified defendant Aguire as Doe 1 in

28  Claim One, and defendant Gardner as Doe 2 in Claim Two.  Dkt. 58 at 18-19.  Raiser

1  identified defendant Rodriguez (also designated "Doe 2") in Claim Seven. <u>Id.</u> at 23.

2  Raiser identified defendant Wood (designated "Doe 5") in Claim Thirteen. <u>Id.</u> at 29.

3  Therefore, these named defendants are not "DOES", and any references made to

4  DOE with respect to Claim One, Two, Seven, and Thirteen appear to be erroneous.[14]

5  On the other hand, the designation of DOE is warranted for certain

6  defendants Raiser has not yet named. In Claim Four, Raiser alleges a "Riverside

7  county deputy" detained him. <u>Id.</u> at 20. In Claim Five, Raiser alleges he was detained

8  by "a Riverside county deputy" (Raiser appears to erroneously name this defendant as

9  Doe 1). <u>Id.</u> at 21–22. In Claim Seventeen, Raiser alleges "Doe 15", "a Riverside

10  county deputy and Temecula police officer" detained him. <u>Id.</u> at 26. In Claim

11  Eighteen, Raiser alleges three deputies walked up behind Raiser's car and "Doe 17"

12  ordered Raiser out of his car with his gun drawn. <u>Id.</u> at 37.

13  All other DOE defendants are not specifically listed as defendants in any

14  Claim, nor does Raiser state any factual allegations against them. Hence, all claims

15  against DOE defendants, with the exception of the following, are subject to dismissal:

16  - Claim Four,

17  - Claim Five,

18  - Claim Seventeen ("Doe 15"), and

19  - Claim Eighteen ("Doe 17").

20  <u>See</u> <u>Iqbal</u>, 556 U.S. at 676 (holding plaintiff must present facts showing how a

21  particular defendant was directly and personally involved in inflicting the alleged

22  injury).

23  **VI.**

24  **<u>LEAVE TO FILE A FOURTH AMENDED COMPLAINT</u>**

25  For the foregoing reasons, the TAC is subject to dismissal. As the Court is

26  unable to determine whether amendment would be futile, leave to amend is granted.

27  _____

28  [14] Additionally, in Claim Nine, Raiser names "Doe 3." As discussed above, Claim
Nine is subject to dismissal based on the statute of limitations.

23

1  See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam). Plaintiff is

2  advised that the Court's determination herein that the allegations in the TAC are

3  insufficient to state a particular claim should not be seen as dispositive of that claim.

4  Accordingly, while the Court believes Plaintiff has failed to plead sufficient factual

5  matter in his pleading, accepted as true, to state a claim to relief that is viable on its

6  face, Plaintiff is not required to omit any claim in order to pursue this action.

7  However, if Plaintiff asserts a claim in his Fourth Amended Complaint that has been

8  found to be deficient without addressing the claim's deficiencies, then the Court,

9  pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned

10 district judge a recommendation that such claim be dismissed with prejudice for

11 failure to state a claim, subject to Plaintiff's right at that time to file Objections with

12 the district judge as provided in the Local Rules Governing Duties of Magistrate

13 Judges.

14        Accordingly, IT IS ORDERED THAT **within twenty-one (21) days** of the

15 service date of this Order, Plaintiff choose one of the following three options:

16        1.        Plaintiff may file a Fourth Amended Complaint to attempt to cure the

17 deficiencies discussed above.  The Clerk of Court is directed to mail Plaintiff a blank

18 Central District civil rights complaint form to use for filing the Fourth Amended

19 Complaint, which the Court encourages Plaintiff to use.

20        If Plaintiff chooses to file a Fourth Amended Complaint, he must clearly

21 designate on the face of the document that it is the "Fourth Amended Complaint," it

22 must bear the docket number assigned to this case, and it must be retyped or

23 rewritten in its entirety, preferably on the court-approved form.  Plaintiff shall not

24 include new defendants or allegations that are not reasonably related to the claims

25 asserted in the TAC.  In addition, the Fourth Amended Complaint must be complete

26 without reference to the TAC, SAC, FAC, Complaint, or any other pleading,

27 attachment, or document.

28

An amended complaint supersedes the preceding complaint. <u>Ferdik v.</u> <u>Bonzelet</u>, 963 F.2d 1258, 1262 (9th Cir. 1992). After amendment, the Court will treat all preceding complaints as nonexistent. <u>Id.</u> **Because the Court grants Plaintiff leave to amend as to all his claims raised here, any claim raised in a preceding complaint is waived if it is not raised again in the Fourth Amended Complaint.** <u>Lacey v. Maricopa Cty.</u>, 693 F.3d 896, 928 (9th Cir. 2012).

The Court advises Plaintiff that it generally will not be well-disposed toward another dismissal with leave to amend if Plaintiff files a Fourth Amended Complaint that continues to include claims on which relief cannot be granted. "[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" <u>Ismail v. Cty.</u> <u>of Orange</u>, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012); <u>see also</u> <u>Ferdik</u>, 963 F.2d at 1261. Thus, **if Plaintiff files a Fourth Amended Complaint with claims on which relief cannot be granted, the Fourth Amended Complaint will be dismissed without leave to amend and with prejudice.**

2.      Alternatively, Plaintiff may file a notice with the Court that he intends to stand on the allegations in his TAC. If Plaintiff chooses to stand on the TAC despite the deficiencies in the claims identified above, then the Court will submit a recommendation to the assigned district judge **that the deficient claims discussed in this Order be dismissed with prejudice for failure to state a claim**, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges. If the assigned district judge accepts the findings and recommendations of the undersigned Magistrate Judge and dismisses the deficient claims discussed in this Order, the Court will issue a separate order regarding service of any claims remaining in the TAC at that time.

3.      Finally, Plaintiff may voluntarily dismiss the action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a). <u>The Clerk of Court is directed to</u>

mail Plaintiff a blank Notice of Dismissal Form, which the Court encourages Plaintiff to use if he chooses to voluntarily dismiss the action.

**Plaintiff is explicitly cautioned that failure to timely respond to this Order will result in this action being dismissed without prejudice for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Dated:  December 30, 2020

HONORABLE KENLY KIYA KATO
United States Magistrate Judge